**ATLANTIC CITY MUNICIPAL UTILITIES AUTHORITY**

v.

**REGIONAL ADMINISTRATOR, Region II United States Environmental Protection Agency.**

**Appeal of ATLANTIC CITY MUNICIPAL UTILITIES AUTHORITY, Appellant.**

**No. 85–5638.**

United States Court of Appeals, Third Circuit.

Argued May 2, 1986.

Decided Oct. 14, 1986.

As Amended Oct. 20, 1986.

---

Albert J. Slap (argued), Slap, Williams & Cuker, Philadelphia, Pa., for appellant.

F. Henry Habicht, II, Asst. Atty. Gen., Thomas W. Greelisch, U.S. Atty., Mary Gibbons Whipple, Asst. U.S. Atty., Trenton, N.J., Ann C. Hurley, Robert L. Klarquist, Dirk D. Snel (argued), U.S. Dept. of Justice, Washington, D.C., Francis S. Blake, General Counsel, Alan E. Brown, Asst. Gen. Counsel, Howard Corcoran, Anthony F. Guadagno, E.P.A., Washington, D.C., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges, and MENCER, District Judge *

* Honorable Glenn E. Mencer, United States District Judge for the Western District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This is an appeal from a summary judgment entered by a district court upholding the denial by appellee of a federal assistance grant to appellant. *Atlantic City Mun. Utilities v. Regional Administrator, EPA,* 616 F.Supp. 722, 725 (D.N.J.1985). Because we find that the district court lacked jurisdiction, we will reverse with a direction that the case be dismissed.

### I.

Appellant, the Atlantic City Municipal Utilities Authority ("ACMUA"), was organized in 1978 to provide water and sewer service to Atlantic City. In 1980, ACMUA applied to the United States Environmental Protection Agency ("EPA") for a $3,573,-750 federal grant to purchase a sewage collection system. The Clean Water Act segment, 33 U.S.C. §§ 1281–1299 (1982), of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251, *et seq.* (1982), authorizes the Administrator of the EPA to make such grants. 33 U.S.C. § 1281(g) (1982). ACMUA's intention was to use this grant to purchase a privately-owned sewage collection system that emptied into a publicly-owned sewage treatment facility. The sewage collection system was over a century old and, due to excessive infiltration, had caused an overflow problem at the treatment facility. The result of this problem had been the pollution of near-shore areas in the vicinity of Atlantic City. ACMUA intended to remedy this problem through rehabilitating and improving the system after its purchase.

As part of its application for the EPA grants, ACMUA applied to the New Jersey Department of Environmental Protection ("NJDEP") for certification. Such state certification is a required precondition for the award of federal assistance. 33 U.S.C. § 1284(a)(3) (1982). This state certification can only be granted as the result of a

statutorily mandated "planning process" by which the state develops and submits to the EPA annually an inventory and priority ranking of proposed waste treatment projects. 33 U.S.C. § 1313(e)(3)(H) (1982); 40 C.F.R. § 35.2015(e) (1984).[1] ACMUA's proposed project was certified by the NJDEP in 1980 and ranked 154th of 231 eligible projects on its 1981 "priority list".

In May of 1981, ACMUA was informed of the EPA Regional Administrator's decision not to fund the project. This decision was based on 40 C.F.R. 35.940–3(d) (1980), which established a preference for the funding of construction of new pollution control facilities, as opposed to the acquisition of existing systems. The Regional Administrator explained this preference in the context of ACMUA's application as follows:

> When considered apart from any upgrade or expansion, an acquisition of all or part of an existing wastewater treatment system usually provides no water pollution control service additional to those already being provided prior to acquisition. Under this principle, a regional sewer authority's acquisition of a municipally or privately owned system generally is not eligible. (Region's Brief before the Appeals Board, p. 4.)
>
> \* \* \* \* \* \*

As stated in the Authority's Facility Plan Analysis (Exhibit 10, page 1.1) the primary objective of the Authority's proposed acquisition is to provide the necessary construction to rehabilitate the deteriorated facilities which are a serious public health hazard. The rehabilitation would include the complete replacement of the pumping station and an increase in the presently insufficient capacity of the system. (Region's Brief before the Appeals Board, pp. 1 and 2).

\* \* \* \* \* \*

As laudable and as necessary as these objectives may be, their achievement is no justification for the federal funding of the purchase price of the deteriorated collection system itself. *Clearly* the acquisition of that system will provide no new pollution control benefits within the meaning of EPA's policies and rules set forth in Exhibits 1G and 2G. (Region's Brief before the Appeals Board, p. 5).

The Regional Administrator thus distinguished between funding the *purchase price* of the deteriorating system and funding the *improvement* of that system, noting that the purchase itself would have no beneficial effect on pollution.

ACMUA appealed from this denial to the EPA's Board of Assistance Appeals. *See* 44 Fed.Reg. 46,770 (1979). In October of 1982, the Board reversed the decision of the Regional Administrator. It concluded as follows:

> We conclude that the State of New Jersey did not have a sufficient number of new construction projects during FY 80 to use all of the available federal grant funds. It was, therefore, possible to fund the Authority's acquisition of the privately owned system without jeopardizing a new project or conflicting with EPA policy.

The Board further concluded that the Regional Administrator should have viewed the purchase and rehabilitation as a single project and that, from this perspective, the grant would enhance water quality. In August of 1983, the Board refused the Regional Administrator's request for reconsideration.

---

1. 33 U.S.C. § 1313(e)(3)(H) provides:
   (e) Continuing planning process
   (3) The Administrator shall approve any continuing planning process submitted to him under this section which will result in plans for all navigable waters within such State, which include, but are not limited to, the following:
   \* \* \* \* \* \*
   (H) an inventory and ranking, in order of priority, of needs for construction of waste treatment works required to meet the applicable requirements of sections 1311 and 1312 of this title.
   While the Act itself thus does not specify that this prioritizing be done by a state on an annual basis, the regulations have required annual lists since at least 1978. 40 C.F.R. § 35.915(c) (1980).

In October of 1984, the Regional Administrator informed NJDEP and ACMUA that the project could only be funded if NJDEP certified the project for the then current 1985 fiscal year. NJDEP did not do so. ACMUA's attorney informed EPA's Regional Administrator that ACMUA would file suit after 60 days. *See* 33 U.S.C. § 1365(b)(1)(A) (1982). In February of 1985, ACMUA brought this action in district court under the "citizen suit" provision of the Clean Water Act. 33 U.S.C. § 1365(a)(2) (1982). This grant of jurisdiction enables the district court to hear complaints seeking to compel the performance by the EPA Regional Administrator of nondiscretionary duties. ACMUA claimed that the Regional Administrator had failed to fulfill his nondiscretionary duty to fund the project after the Board found ACMUA "entitled" to funding.[2] By way of relief, ACMUA requested the 1981 federal grant assistance in current dollars.

EPA moved to dismiss for want of subject matter jurisdiction and alternatively moved for summary judgment or dismissal for failure to state a claim on which relief could be granted. ACMUA filed a cross-motion for summary judgment. The district court held that, contrary to EPA's contention, it did have subject matter jurisdiction under the "citizen suit" provision of the Clean Water Act. 616 F.Supp. at 733. The district court further held that the EPA Regional Administrator had "properly interpreted" the Clean Water Act when he required recertification by the NJDEP. *Id.* at 734. This appeal followed the district court's grant of summary judgment to EPA.

### II.

The sole basis of jurisdiction relied upon in ACMUA's complaint was 33 U.S.C. § 1365(a)(2), the citizen suit provision of the Clean Water Act. We recently had the opportunity to interpret and apply that pro-

vision in *Fairview Township v. E.P.A.,* 773 F.2d 517 (3d Cir.1985) which, like this action, arose out of a sewer authority's efforts to secure an EPA grant for sewer improvements. We will follow the "citizen suit" analysis of that case in analyzing ACMUA's claim.

In *Fairview,* the Northern York Joint Sewer Authority ("Northern York") had applied to the EPA for a $14,000,000 grant. It contended in its citizen suit claim that the Administrator had had a nondiscretionary duty to approve or disapprove its grant application within forty-five days of receipt and that the Administrator's failure to do so meant that the application must be "deemed approved." In response, the EPA contended, first, that approval of the grant application would be tantamount to a judgment for money damages, relief not available under the citizen suit provision and, second, that the Administrator had no nondiscretionary duty to approve or disapprove the application within a forty-five day period.

We rejected the EPA's first argument finding that Northern York was "not seeking recompense for consequential damages done in the past," but rather sought "funds which the Administrator allegedly controlled but refused to provide." We then concluded:

> The fact that the Administrator's fulfillment of his alleged statutory nondiscretionary duties might result in the disbursements of federal funds does not justify attaching the label "money damages" to the relief which appellants seek....

773 F.2d at 525.

We then turned "to the other possible reason for lack of district court jurisdiction over the citizen suit, namely the absence of any nondiscretionary duty." 773 F.2d at 517. We found that the forty-five day requirement applied only to those cases in which the EPA had delegated to the state

---

**2.** ACMUA's complaint also claimed that EPA officials acted in bad faith. It ultimately acknowledged before the district court, however, that the Regional Administrator's denial of the grant was based solely on his view that current state certification was required. 616 F.Supp. at 727.

agency the task of certifying *"all delegable* pre-award requirements." We held "that because [the state agency in Northern York's case] had not been delegated all of the EPA's delegable tasks, the Administrator was not under a nondiscretionary duty to approve or disapprove Northern York's ... application within forty-five days, and that, as a result, [the forty-five day provision of the statute could not] ... be the basis for appellants' citizens' suit against the Administrator." 773 F.2d 517 (3d Cir.1985).[3]

In the course of reaching this conclusion, we noted:

We note that EPA's interpretation of the statute has since become the law due to the promulgation of regulations that deal explicitly with this issue. On May 12, 1982—while Northern York's application was before the Administrator for review—the Administrator published interim final regulations for the enforcement of § 1299. 47 Fed.Reg. 20,462–63 (1982) (to be codified at 40 C.F.R. § 35.-2042(2)). The regulations provided that "[w]hen EPA receives a certification covering *all* applicable Federal requirements, the Regional Administrator shall approve or disapprove the grant within 45 days of receipt." *Id.* (emphasis added). In their current form, the regulations state explicitly that the Administrator's duty to review an application within forty-five days applies only "[w]hen EPA receives a certification covering *all delegable* pre-award requirements...." 40 C.F.R. § 35.2041(2)(i) (1985) (emphasis added).

Northern York has failed to present any convincing explanation as to why EPA's eminently reasonable interpretation of § 1299 should be rejected. We see no reason not to accord the Administrator's construction the deference that is usually owed to the interpretation of statutes by the agencies entrusted with their enforcement. [citations omitted].

We are, of course, bound to follow the holding of *Fairview* that citizen suit jurisdiction may exist in some cases even though the requested relief may result in the plaintiff's ultimately receiving a money grant. Accordingly, we reject the EPA's argument to the contrary. However, here as in *Fairview,* we conclude that there is no citizen suit jurisdiction under 33 U.S.C. § 1365 because the alleged nondiscretionary duty which plaintiff seeks to enforce does not exist.

ACMUA here alleges that the EPA Regional Administrator, upon the denial of his motion to reconsider in 1984, had a nondiscretionary duty to accept ACMUA's inclusion on New Jersey's 1981 priority list in satisfaction of the requirements of 33 U.S.C. § 1313(e)(3)(H). We disagree. Like the district court, we conclude that the Regional Administrator was entitled to insist upon a current certification. We find the district court's explanation for this conclusion persuasive and, therefore, adopt it as our own:

Congressional allotments for EPA grants are made on an annual basis. Each year, states submit a new priority list to the EPA. Clearly, the ranking of projects in a priority list addresses the relative, not the inherent, merits of each. The perceptions held by the NJDEP, regarding what water treatment facilities are most needed, simply may change from year to year. The FWPCA sensibly permits these perceptions to be given effect.

In this case, for example, the FY 1981 NJDEP evaluation of the ACMUA proposed project may no longer accurately reflect the water treatment needs of New Jersey. The EPA Board of Assistance Appeals, it should be recalled, specifically premised its approval of the ACMUA project on the relatively low number of competing, proposed acquisitions. EPA Bd. op. at 8. Thus, funding the

---

**3.** In *Fairview,* we expressly declined to "reach the question whether the U.S. Claims Court would have exclusive jurisdiction over this dispute if appellants had been able to maintain a viable citizens' suit under the jurisdictional grant of 33 U.S.C. § 1365." 773 F.2d at 527, n. 18. Similarly, we decline to reach that issue in this case.

ACMUA project did not jeopardize funding for the new construction grants which the EPA favors. *See supra* p. 8 n. 3. The NJDEP may no longer view the ACMUA proposal in this light. If we prevented the NJDEP from *fully* participating in the FY 1985 evaluation process, by insisting that it abide by one of its FY 1981 conclusions, we would subvert the FWPCA funding scheme.

616 F.Supp. at 734.

Assuming that ACMUA in fact met all of the eligibility requirements for a grant in 1981, as it alleges in its complaint,[4] there would be some equitable appeal to its arguments that the law should regard as having been done in that year what should, in retrospect, have been done at that time and that ACMUA should be put in the same position it would have been in had it received a grant in 1981. Nevertheless, as recognized by the appeal and review procedure of the regulations, the regulatory process is not a perfect one; errors and delays are inevitable. As a result, two important factors must be counterposed against AC-MUA's appeal to equity: (1) the difficulty of administering a system under which the Administrator would be required to utilize a priority list effective when the application "should have been approved," rather than the current list, and (2) the public interest in having limited resources utilized in the most effective and efficient manner possible. If, when the time for final resource commitment actually comes, it appears that a particular project fails to serve that public interest, it should not be undertaken simply because it appeared worthy of priority at an earlier date.

Moreover, we note that here, as in *Fairview*, "the EPA's interpretation of the statute has since become the law due to the promulgation of regulations that deal expressly with the issue." 773 F.2d at 526. Since May 12, 1982, the applicable regulations have provided in part as follows:

(c) *Project priority list.* The State's *annual* project priority list is an ordered listing of projects for which the State expects Federal financial assistance....

40 C.F.R. § 35.2015(c) (1982).

\* \* \* \* \* \*

(4) The Regional Administrator will review the project priority list to insure compliance with the State's approved priority system. The Regional Administrator will complete review of the project priority list within 30 days of receipt from the State and will notify the State in writing of acceptance or rejection, stating the reasons for the rejection. *Any project which is not contained on an accepted priority list will not receive funding.*

40 C.F.R. § 35.2015(e)(4) (1982) (emphasis supplied).

We believe the import of these regulations in an annual planning and funding context should have been clear to ACMUA. If any ambiguity remained in 1982, however, it was dispelled on February 17, 1984 when the sentence italicized above was amended to read:

Any project which is not contained on an accepted *current* priority list will not receive funding.

40 C.F.R. § 35.2015(e)(3) (1984) (emphasis supplied).

"We see no reason not to accord the Administrator's construction [of 33 U.S.C. § 1313(e)(3)(H)] the deference that is usually owed to the interpretation of statutes by the agencies entrusted with their enforcement." *Fairview, supra,* at p. 526.

While we agree with the district court's conclusion that the Administrator was entitled to insist on a current certification, we differ with its view concerning the consequences of that conclusion. The district court viewed its conclusion as a disposition of ACMUA's case on its merits. Since the issue resolved is the only one presented by ACMUA's case on the merits, that is an understandable view. That issue is properly addressed first, however, in the context of the jurisdiction inquiry and we believe

---

**4.** As hereafter indicated, ACMUA's brief before us asserts only that "in all likelihood," processing in 1981 "would have led to approval" had the Administrator not erred.

the appropriate disposition is a dismissal for lack of jurisdiction. Our observation in *Fairview* is equally applicable here:

We recognize that this disposition of appellants' citizens' suit might be viewed as the magistrate saw it, as dismissal for failure to state a claim upon which relief can be granted. *See supra,* at 523. We believe, however, that it is more properly viewed as a dismissal for lack of jurisdiction, since district courts have jurisdiction over citizens' suits only if plaintiffs allege a duty not discretionary with the Administrator. *See* 33 U.S.C. § 1365.

773 F.2d at 527, n. 18.

### III.

We decided the *Fairview* case after the disposition of this case by the district court. With the benefit of our *Fairview* decision, ACMUA has suggested before this court that there was an alternative, unpleaded basis for jurisdiction over this case in the district court. It points out that we found district court jurisdiction in *Fairview* under similar circumstances based upon the Administrative Procedure Act and the statute conferring original jurisdiction in federal question cases, 5 U.S.C. § 701 *et seq.;* 28 U.S.C. § 1331 (1982). The circumstances in the two cases, while similar, are materially different, however.

In *Fairview,* we expressly noted that jurisdiction under the theory there endorsed would not extend to a claim for money. We suggested that this conclusion, at least with respect to a monetary claim in excess of $10,000, would follow from the provisions of the Tucker Act. 28 U.S.C. § 1491 *et seq.* (1982). The same conclusion would follow with respect to any monetary claim by virtue of the fact that the APA does not waive sovereign immunity in monetary claims cases. 5 U.S.C. § 702 (1982).[5] Northern York's alternative claim in *Fair-*

*view,* over which we exercised jurisdiction, was that the Regional Administrator had applied arbitrary and capricious guidelines when he ultimately denied Northern York's application after the forty-five day period had passed. This claim did not constitute a monetary claim because Northern York asked only that the EPA's disapproval be set aside and that the EPA reprocess its application in accordance with the legally applicable criteria. We also noted that Northern York's application still had to face the requirement of an environmental impact statement and "other nondelegable determinations." 773 F.2d at 529. For these reasons, we concluded that "victory for the plaintiff in the suit would [not] be tantamount to a release of funds" and that plaintiff's claim could "hardly be considered a money claim." 773 F.2d at 516, 517.

By contrast, ACMUA in this case alleged that "the Board found that ACMUA satisfied all the criteria for grants" and that its project was "entitled to be federally funded." [7a–8a]. Accordingly, it asked, not that its application be processed, but rather that it be given the following relief:

A. Order EPA to provide Federal Grant Assistance forthwith to ACMUA pursuant to the Authority's 1981 Application;

B. Order EPA to pay any shortfall in the amount ACMUA needs to purchase the ACSCO due to inflation or other factors caused by EPA's unreasonable actions and inactions;

C. Assess punitive damages against those EPA employees who are responsible for not following the requirements of the law and the express directions of the Board of Assistance Appeals;

---

**5.** Section 702 provides in part:

An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or

failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United

D. Award plaintiff its costs of this litigation, including reasonable attorneys' and expert witness fees.[6]

There can, accordingly, be no doubt that ACMUA asserts a monetary claim in this suit. While it has attempted to shift gears somewhat before us, we have held in similar circumstances that a plaintiff is bound by its pleading. As we noted in *Hahn v. United States*, 757 F.2d 581, 587 (3d Cir. 1985):

> ... Though we are prepared to be generous in construing a complaint, so that jurisdiction is not lost due to faulty pleading, as an appellate court we cannot go beyond the fact of the complaint as well as the record, to impute allegations that contradict the complaint....

### IV.

At oral argument, ACMUA asked that we transfer its case to the United States Claims Court, pursuant to 28 U.S.C. § 1406 (1982), in the event we determined that it asserted a monetary claim not grounded in tort. While we believe such transfers should be liberally granted, we do not see how a transfer could serve any useful purpose in this case and, therefore, decline to consider whether a transfer would otherwise be appropriate. ACMUA's entire case depends on the validity of the proposition that the Regional Administrator wrongfully refused in 1984 to accept New Jersey's 1981 prioritization.[7] We have determined, in the course of resolving the jurisdictional issues presented by this case, that this refusal was not wrongful. While the district court and this court have been found to lack subject matter jurisdiction over this case, courts have jurisdiction in every case to determine their own jurisdiction. It follows that ACMUA is bound by our determination that the Regional Administrator properly insisted on a current certification. The principles which would

foreclose it from relitigating that issue in the Claims Court were recently reviewed in *Equitable Trust Co. v. Commodity Futures Commission*, 669 F.2d 269, 272 (5th Cir.1982):

> [As] the Supreme Court has pointed out, "the principles of res judicata apply to questions of jurisdiction as well as to other issues." *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). The abating effect of a jurisdictional dismissal has been variously described, but whether termed "direct estoppel," Restatement, Judgments § 49, Comment B (1942), or "issue preclusion," Restatement (2d), Judgments § 68 (tentative draft no. 4, 1977), the law is clear: a dismissal for lack of subject-matter jurisdiction, while "not binding as to all matters which could have been raised," is, however, conclusive as to matters actually adjudged. *Acree v. Airline Pilots Association*, 390 F.2d 199, 203 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); Restatement (2d), Judgments § 68, *supra*....

### V.

For the foregoing reasons, we will reverse the judgment of the district court and remand this case with the direction that it be dismissed for lack of jurisdiction.

SLOVITER, Circuit Judge, dissenting:

The majority holds that the district court had no subject matter jurisdiction over the claim of Atlantic City Municipal Utilities Authority (ACMUA) under the citizen suit provision of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1365(a)(2). I would hold that the court had subject matter jurisdiction under the

---

States or that the United States is an indispensable party....

**6.** While ACMUA's complaint included the standard request that the court "award other such legal and equitable relief as ... [it] deems fit and proper," ACMUA suggested no specific equitable relief during the proceedings in the district court.

**7.** ACMUA's brief before this Court contains a section arguing that the EPA is "estopped" to insist upon a current certification. This theory was neither pleaded [5a–11a] nor argued by ACMUA in its district court brief in opposition to the defendants' motions. [57a–74a] Accordingly, it is not properly before us.

citizen suit provision. Although the majority's analysis makes it likely that ACMUA would, in any event, lose on the merits in whatever court was eventually found to have jurisdiction, my differences with the majority are far from academic. At issue is the jurisdiction of the district courts over suits brought under a statute serving the important public purpose of controlling and abating water pollution. While it may not matter to ACMUA whether it is eaten by a lion or a tiger, the analysis used by the majority in rejecting its claim may make survival of future claims for judicial review of EPA inaction more difficult.

Under the citizen suit provision of the FWPCA, 33 U.S.C. § 1365(a), the district courts have jurisdiction to order the Administrator to perform any act or duty "which is not discretionary." [1] The basis for the majority's holding that the district court had no subject matter jurisdiction is its conclusion that "here as in *Fairview* ... the alleged nondiscretionary duty which plaintiff seeks to enforce does not exist." Maj. Op. at 100. The majority never thereafter explains why the act or duty in question, i.e. to receive current state certification before releasing funds for an application previously approved, should be characterized as discretionary.

The analytic process used by the majority, and indeed by *Fairview Township v. EPA*, 773 F.2d 517 (3d Cir.1985), to which the majority refers, compresses the jurisdictional inquiry and the merits inquiry into one. The majority first decides whether the statute permits the Administrator to exercise discretion in the matter at issue. If so, then it would hold that there was no subject matter jurisdiction in the district court in the first instance. If there was a nondiscretionary duty, then presumably the majority would, in one swoop, uphold the jurisdiction of the district court and decide the merits, unless there was a factual issue requiring further resolution.

I believe that is an unwise approach to follow in making a jurisdictional ruling. I suggest that a more appropriate course would be to determine from the face of the complaint whether the allegation of a nondiscretionary duty appears to be frivolous or insubstantial. If a nonfrivolous claim has been asserted that the Regional Administrator has failed to perform a nondiscretionary duty or act, then I believe that there is jurisdiction in the federal courts under the citizen suit provision.

As the district court in this case stated, "The FWPCA does not specify or imply what acts or duties of the EPA Administrator are not discretionary." *Atlantic City Municipal Utilities Authority v. Regional Administrator*, 616 F.Supp. 722, 733 (D.N.J.1985). The Clean Water Act segment of the FWPCA, 33 U.S.C. §§ 1281–1299, vests in the Regional Administrator broad discretion to determine which proposed treatment facilities receive federal funding. The Regional Administrator exercised that discretion in his initial decision to deny funding to ACMUA. Concededly, ACMUA could not have utilized the citizen suit provisions to attack that decision, since it is patently a discretionary duty.

However, the Regional Administrator's exercise of his discretionary duties was overturned by the EPA's Board of Assistance Appeals which held that the acquisition of the sewer plant, which was the subject of ACMUA's application, was "appropriate and eligible under the statutes, regulations and EPA policy." App. at 25. Thus, the matter was returned to the Re-

---

**1.** The citizen suit provision, in pertinent part, states:

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
... (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator,

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties ... to order the Administrator to perform such act or duty, as the case may be,....
33 U.S.C. § 1365(a). Subsection (b) sets forth notice requirements which are not at issue in this case.

gional Administrator. There was no longer any discretionary decision to be made by him, although he retained authority, and indeed the duty, to deny funding if the application failed to comply with any requirement of the Clean Water Act.

The Regional Administrator's subsequent decision to deny ACMUA funding was based on his interpretation of the statutory provision that requires that funds be given only for "works [that] have been certified by the appropriate State water pollution control agency as entitled to priority over such other works in the State in accordance with any applicable State plan" 33 U.S.C. § 1284(a)(3). The interpretation of statutory language is a matter of law subject to review in the courts, and is not the type of discretionary duty that is precluded from judicial review under the citizen suit provision. As the district court stated, "the FWPCA either requires current certification or it does not." 616 F.Supp. at 733. I could not characterize as frivolous ACMUA's contention that the "certification" requirement of the statute could be satisfied by its earlier certification. I would therefore conclude that there was citizen suit jurisdiction under the FWPCA.

In this case, ACMUA seeks a release of funds. If ACMUA is viewed as asserting a monetary claim exceeding $10,000, it would be necessary for this court to decide whether judicial review under the citizen suit provision (or even under the joint provisions of federal question jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedure Act, 5 U.S.C. § 702) belongs to the district courts or to the Claims Court under the exclusive jurisdiction provisions of the Tucker Act, 28 U.S.C. §§ 1346 & 1491. That determination would depend on whether jurisdiction over this type of claim has been withdrawn from the Claims Court by Congress through its enactment of the citizens suit provision of the FWPCA. In a discursive footnote in *Fairview*, there were references to various cases holding that notwithstanding the Tucker Act, suit could be brought in the district court under a narrow grant of jurisdiction providing for

review of the actions of one specific agency. *See Fairview*, 773 F.2d at 527 n. 18. The majority pretermits consideration of those difficult questions by its decision on the merits in the context of its jurisdictional holding. Analysis of these issues in a dissent would be a dissertation in futility, and I will therefore reserve comment for the day when it would be pertinent to the court's holding.

I respectfully dissent from the majority's holding that there was no subject matter jurisdiction under the citizens suit provision.

Each party shall bear its own costs.