**UNITED STATES of America, Appellee,**

v.

**Kenneth Eugene OLIVER, Appellant.**

**No. 669, Docket 74–2412.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1975.

Decided June 17, 1975.

Theodore J. Burns, Asst. U. S. Atty. (Richard J. Arcara, U. S. Atty., Western District of New York, on the brief), for appellee.

George P. Doyle, Buffalo, N. Y., for appellant.

Before LUMBARD, MOORE and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a conviction for three counts of bank robbery arising from an armed robbery of a branch of the Manufacturers and Traders Trust Company in Buffalo, New York, on July 12, 1972. Kenneth Oliver was tried by the District Court for the Western District of New York on September 10 and 11, 1974, having waived his right to a jury trial. The evidence presented included stipulations and exhibits.

Appellant argues (1) that the United States Attorney failed to comply with the Plan for Achieving Prompt Disposition of Criminal Cases of the Western District of New York[1] and thus denied Oliver his right to a speedy trial; (2) that the lower court erred in not suppressing certain evidence because the government failed to meet its burden in showing that the warrantless search was consented to; (3) that the evidence failed to support a conviction for aggravated bank robbery, 18 U.S.C. § 2113(d), since there was no proof that the gun used in the robbery was loaded; and (4) that the evidence failed to support a conviction under 18 U.S.C. § 2113(a) where the stipulations failed to indicate that the bank employees "were fearful." We find (1) that the United States Attorney fulfilled his obligations under the Plan for Prompt Disposition of Criminal

---

1. This plan "to minimize undue delay and to further prompt disposition of criminal cases" was adopted pursuant to Rule 50(b) Fed.R. Crim.P. on Feb. 28, 1973 to be effective April 1, 1973. Prior to that time, substantially simi-lar rules were in operation in the form of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases originally promulgated on January 5, 1971, amended May 24, 1971.

Cases, (2) that the warrantless search was valid as a consent search because of the consent of Linda Oliver, and (3) that the evidence fully supports the conviction. Therefore we affirm.

On July 12, 1972, a black man in a Camaro automobile followed an employee of the Manufacturers and Traders Trust Company into the parking lot adjoining the Buffalo branch of the bank. The man questioned the woman at gunpoint about security at the bank and then with the gun still pointed at her followed her into the bank. Once inside the bank he told the manager and tellers to open several drawers and place the money from the drawers into his black attache case. The robber knew the names of various bank employees and stated that he also knew the location of their residences. Bank employees described the robber as a black male, mid 30's, 5'10" to 6', 235–240 lbs., wearing a fake plastic beard. The employee who had initial contact with the robber indicated that the automobile he was driving was a Camaro, beige or tan in color with a black top. When news of the robbery was broadcast, two citizens called to say that they had seen a man in a Camaro fitting the radio description and had taken down his Michigan license plate number because the man was behaving suspiciously. One of these persons observed the man in the Camaro near the home of the bank manager. The other citizen noticed the man in the parking lot of the bank in the early morning a few days prior to the robbery.

The FBI in Buffalo relayed the information about the license plate and robbery to the FBI in Detroit. A state motor vehicle department check revealed that the car was registered to a Linda Oliver whose residence was in Detroit. On July 12, 1972, an FBI agent went to the Oliver residence but did not see the automobile. He returned to the Oliver residence on the morning of July 13, 1972, with several other agents. Linda Oliver answered the door and, in response to the agents' questions, she indicated that her license plates had not been stolen and were on her automobile in her garage and that she was married but that her husband was not at home. The agents accompanied her to her garage and saw a silvergray Camaro with a black vinyl top bearing the license plate number which had been relayed to them. The agents asked her consent to a search of the automobile and house and, when she indicated that she would agree and had nothing to hide, two of the agents drew up a written consent form which was signed by Linda Oliver and witnessed by two of the agents. A search of the car yielded $1,055 in cash and money wrappers bearing the legend "Manufacturers and Traders Trust Company, Buffalo, New York." The agents returned to the house and again asked Linda Oliver if her husband was at home. She responded affirmatively, and the sequence progressed through arrest, questioning and admissions and search of the house yielding further evidence including more cash, a Buffalo street map with names of the bank employees written on it, a fake plastic beard, and an automatic .45 caliber gun.

On July 13, 1972, Oliver was taken before a United States Magistrate where bail was set and a removal hearing pursuant to Fed.R.Crim.P. 40(b)(3) was scheduled for July 21, 1972. He was released on bail the following day, July 14, 1972. Negotiations between Oliver's counsel and an Assistant United States Attorney for the Eastern District of Michigan began, the substance being that Oliver might be willing to plead guilty to the charges resulting from the Buffalo bank robbery if it could be brought to the sentencing court's attention that Kenneth Oliver had cooperated with the Drug Abuse Law Enforcement office. To allow this cooperation to occur, the removal hearing was continued several times—to August 2, 1972, to August 29, 1972, to September 29, 1972, and finally to October 30, 1972—with the consent of Oliver's counsel.

In the interim a bank robbery occurred in Niles, Michigan, on October 12, 1972, and as a result Oliver was arrested

by the FBI on October 13, 1972, on federal bank robbery charges in the Western District of Michigan. When the Assistant United States Attorney for the Western District of Michigan learned that state charges of robbery and murder had been brought against Oliver as a result of the Niles robbery during which a state trooper was killed, the parallel federal charges were dropped to allow the state to prosecute the murder charge involving the death of a state trooper. Oliver was then taken into state custody. The Eastern District of Michigan Rule 40 removal hearing for the Buffalo robbery was dismissed on October 20, 1972.

Oliver remained in the custody of the Michigan state authorities from October 13, 1972 through June 25, 1973, the date he was sentenced on the Michigan state charges. On July 12, 1973, a petition and order for a writ of *habeas corpus ad prosequendum* was filed. Shortly thereafter Oliver was brought to Buffalo. He pleaded not guilty on July 30, 1973, but was without counsel until August 2, 1973, at which time counsel was appointed. Counsel made several pre-trial motions on August 14, 1973, including a motion for dismissal of the indictment for failure to grant defendant a speedy trial. The government answered on August 30, 1973, with an accounting of the time between arrest and defendant's motion. On October 1, 1973, the defense attorney abandoned the speedy trial motion. Docket Cr. 1973–269. Meanwhile, on September 1, 1973, the government notified the Court of its readiness for

trial by forwarding the General Case Report (Form 74) to the Court. This report indicated that the government had been ready to try the case since August 10, 1973. Govt.App. p. 74.

## I.

Appellant contends based on the above facts that the government failed to comply with the Second Circuit Rules regarding Prompt Disposition of Criminal Cases[2] particularly Rule 4 which provides that "(i)n all cases the government must be ready for trial within six months from the date of the arrest . . . .."[3] Rule 5 provides for the exclusion of certain periods of time in the calculation of the six month period. The question then before us is how much "time" measured by the rules passed between Oliver's arrest in July, 1972, and the government's "ready for trial" date of September 1, 1973.[4]

■ The first period to examine involves the time from the first arrest on the Buffalo charges, July 13, 1972, to the time of the second arrest on the Michigan charges in October. The Magistrate's records indicate that on July 18, 1972, the removal hearing which had been set for July 21, 1972, was continued with the consent of Oliver's counsel. As noted above, continuances or adjournments were agreed on several additional times for the purpose of giving Oliver an opportunity to cooperate with federal drug officials. Prior to the removal hearing as finally scheduled, the October

---

**2.** As far as this appeal is concerned the Second Circuit Rules and the Western District Plan Regarding Prompt Disposition of Criminal Cases have the same requirements for government readiness for trial. Our textual references are to the Plan, adopted April 1, 1973.

**3.** Rule 4 provides in full:

In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial

within such time or within the periods as extended by the district court for good cause under rule 5, and if the defendant is charged only with non-capital offenses, then, upon application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed.

**4.** On this date, the government notified the court of its readiness by filing Form 74, the General Case Report. While the case report indicates that the Assistant United States Attorney was ready for trial on August 8, 1973, there is no indication that this readiness was communicated to the court or to the defendant prior to September 1, 1973.

13, 1972 arrest occurred. We find that the period from July 18, 1972, to October 13, 1972, does not count in the six-month determination because it is to be excluded pursuant to the Rule 5(b) exclusion of "period of delay resulting from a continuance granted by the district court at the request of, or with the consent of counsel. . . ." Cf. *United States v. Valoti*, 481 F.2d 22 (2d Cir. 1973).

From October 13, 1972 on, Oliver was in the custody of Michigan State authorities. Rule 5(d) and 5(f) are applicable to the Michigan custody period inasmuch as they cover respectively a period of unavailability when the "location [of the defendant] is known but his presence for trial cannot be obtained by due diligence" and a period of "delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial." After the dismissal of the Rule 40 removal hearing on October 20, 1972, in the Eastern District of Michigan, an Assistant United States Attorney for the Western District of Michigan was in contact with an Assistant United States Attorney in Buffalo. Believing that Oliver might still be contemplating a Rule 20 guilty plea to the Buffalo charges the necessary forms were forwarded to counsel in December 1972.[5] The Buffalo Assistant United States Attorney also was kept informed of the progress of the state prosecution in Berrien County on the bank robbery and murder charges.

On January 17, 1973, Oliver's counsel replied to the Assistant United States Attorney for the Western District of Michigan to the effect that Oliver was no longer considering pleading guilty but rather wanted to go to trial in Buffalo. At the same time, January 22 or so, various pre-trial motions were filed and heard in Michigan state court regarding the state charges. When advised that Mr. Oliver wished to go to trial in Buffalo the Assistant United States Attorney in Buffalo filed a petition for a writ of *habeas corpus ad prosequendum*, 28 U.S.C. 2241(c)(5), which was granted by the District Court on March 21, 1973. The writ was dismissed before execution because when the Assistant United States Attorney for the Western District of New York talked with the Michigan prosecutor he was informed that Oliver's presence in Michigan was required for expeditious disposition of the state proceedings. More specifically, Oliver had moved in state court for a competency hearing and apparently had been committed for psychiatric observation on February 28, 1973, for a period of up to 60 days. The Berrien County prosecutor also indicated that interruption of the competency examination would hamper Oliver's defense of his state charges. From that date forward, the Assistant United States Attorney in Buffalo kept himself informed of the progress of the state court proceedings and, following the sentencing of Oliver in late June 1973, the Assistant United States Attorney applied for a second writ of *habeas corpus ad prosequendum* on July 12, 1973, with the result that Oliver was brought to Buffalo around July 25, 1973. We find that the Assistant United States Attorney in these circumstances exercised due diligence and made reasonable efforts to have Oliver produced for trial during the period when Oliver was "unavailable" and "in detention." While a writ of *habeas corpus ad prosequendum* may use mandatory language, the jurisdiction to which such a writ is addressed is relied upon to cooperate in turning over the defendant to the other sovereign.[6] In this situation, principles of

---

5. Fed.R.Crim.P. 20 affords a defendant arrested or held in a district other than the one where prosecution would occur to obtain disposition of the matter in the district where defendant is held if defendant pleads guilty. Since Oliver was in state custody during December 1972 and January 1973 a Rule 20 plea

for the Buffalo robbery could not have been carried out unless a United States Attorney in Michigan were able to gain custody of Oliver.

6. Cf. *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961); *McDonald v. Ciccone*, 409 F.2d 28 (8th Cir. 1969); *U. S. ex*

comity come into play and the Rules 5(d) and 5(f) recognize that an Assistant United States Attorney should make "reasonable efforts" to obtain defendant's presence for trial, and need not bring to bear all possible federal power. The state charges which were being expeditiously moved toward trial included a murder charge and thus were of a more serious nature than the bank robbery charge pending in Buffalo. The Assistant United States Attorney's decision to dismiss the writ as requested by the state prosecutor was reasonable under the circumstance of an expeditious prosecution of a more serious state prosecution. Thus we find that the period from October 13, 1972, through June 25, 1973, the date Oliver was sentenced by the Michigan state court, is to be tolled in calculating the six month period because Oliver was unavailable and in detention and reasonable, but unsuccessful, efforts were made to secure his presence for trial in Buffalo.

■ Since the government was ready on September 1, 1973, it is clear that the government was ready for trial well within six months measured according to the Plan. Trial did not occur for some time thereafter for a variety of reasons mainly, the filing and consideration of pre-trial motions, the death of Chief Judge Henderson, the consequent reassignment of the case to another trial judge, and change of counsel. Because the Rules deal with government readiness and not actual trial date, these circumstances do not affect our finding that the government complied with Rule 4 of the Plan. Taking account of appropriate exclusions, the Court was notified of government readiness within the time limit imposed by the Prompt Disposition Plan. Nor do they suggest that Oliver was deprived of his sixth amendment

right to a speedy trial. Rather we hold that under the circumstances Oliver was brought to trial as expeditiously as possible.[7]

## II.

■ Appellant's second argument is that the trial judge erred in finding that Linda Oliver consented to search of the vehicle and residence. After careful consideration of the record and the totality of circumstances we find that the judge below did not err in finding that the Government had established by a preponderance of evidence that consent to search was freely and voluntarily given by Linda Oliver. *Cf. United States v. Fernandez,* 456 F.2d 638 (2d Cir. 1972), *United States v. Boston,* 508 F.2d 1171 (2d Cir. 1974).

## III.

Finally, Oliver waived a jury trial and was tried by the Court. Based on two stipulations setting out the expected testimony of ten witnesses and five exhibits he was found guilty on three counts: (1) taking $40,636.14 by force and violence and intimidation from the Manufacturers and Traders Trust Company where said moneys were deposits insured by Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a); (2) larceny of about $40,636.14 from the bank in violation of 18 U.S.C. § 2113(b); and (3) aggravated robbery, use of a dangerous weapon during the commission of a bank robbery in violation of 18 U.S.C. § 2113(d).

■ Appellant argues that the evidence was insufficient to support conviction on §§ 2113(a) and (d) because the stipulations failed to support a finding of the force and violence or intimidation on § 2113(a) or a finding of assault on § 2113(d). We find these claims without

---

*rel. Moses v. Kipp,* 232 F.2d 147 (7th Cir. 1956); *Lunsford v. Hudspeth,* 126 F.2d 653 (10th Cir. 1942).

**7.** Writing for myself, I do not agree with Judge Lumbard's views, expressed in his concurring

opinion as to the interpretation of Rule 5(a), the pertinence (or lack thereof) of *United States v. Cangiano,* 491 F.2d 906 (2d Cir. 1974) or in the various hypothetical situations posed in the footnotes thereto.

merit. The stipulations establish that witnesses would have testified that Oliver used a handgun to force his way into the bank and to direct employees to place the money in his case. Under these circumstances, the fact-finder could properly infer that the gun was loaded and that the perpetrator thus placed the tellers in fear. *United States v. Marshall*, 427 F.2d 434 (2d Cir. 1970).

■ Oliver was sentenced to concurrent 15 year terms on each count. He should have been sentenced on only one count. Therefore we vacate the sentence imposed on Counts I and II. *See United States v. Stewart*, 513 F.2d 957 (2d Cir. 1975); *United States v. Pravato*, 505 F.2d 703 (2d Cir. 1974); *Gorman v. United States*, 456 F.2d 1258 (2d Cir. 1972).

Affirmed, sentences on Counts I and II vacated.

LUMBARD, Circuit Judge (concurring):

While I concur in Judge Moore's handling of the prompt-disposition issue in this case, I think it appropriate to comment on an argument raised by the government, but not considered by Judge Moore. The government contends that Rule 5(a) could be used in this case to toll the running of the six-month period while state charges were pending against Oliver in the state of Michigan from October 13, 1972, to June 25, 1973. I disagree. As this issue has arisen in other cases and will surely be raised again, it may be helpful to meet it now.

■ Rule 5(a) provides for the exclusion of the time while proceedings concerning the defendant are pending.[1] We had occasion to interpret this language in *United States v. Cangiano*, 491 F.2d 906, 909 (2d Cir. 1974), *cert. denied*, 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149 (Oct. 22, 1974). There we held that the entire period of time during which a *prior* federal charge was pending in the same district against Cangiano could be excluded under Rule 5(a).[2] *Cangiano* does not control this case, however, because we are here concerned with charges pending in different jurisdictions, not two federal charges in the same jurisdiction.

The prompt-disposition rules of the federal courts are designed to ensure that a federal defendant will receive a prompt trial on federal charges against him. Thus if only federal crimes in one district are involved, as in *Cangiano*, it is arguable that, even if the time an initial charge is pending is excluded in calculating the time by which the government must be ready to try a subsequent

---

1. Rule 5 provides in part:

   "In computing the time within which the government should be ready for trial under rules 3 and 4, the following periods should be excluded:

   "(a) The period of delay while proceedings concerning the defendant are pending, including but not limited to proceedings for the determination of competency and the period during which he is incompetent to stand trial, pretrial motions, interlocutory appeals, trial of other charges, and the period during which such matters are *sub judice*."

2. *Cangiano* did not pass on the question of whether the filing of a subsequent charge would toll the time by which the government had to be ready to try the initial charge.

   If such time was excluded and a subsequent charge was filed within six months of the first charge, the government would not have to be ready to try the first charge until after disposi-

tion of the subsequent charge. At the same time application of the direct holding of *Cangiano* would mean that the government would not have to be ready to try the second charge until six months after the first charge was tried. By allowing the government to take advantage of both exclusions, the Plan could be nullified completely. Thus, a subsequent charge should not be allowed to toll the time by which the government must be ready to try a prior charge.

The government, of course, is not precluded from trying a subsequent charge first, but it cannot use the subsequent charge as an excuse for failing to prepare its first case. If a defendant is on trial on subsequent charges, the trial days alone would be excludable under Rule 5(a). There is no reason to exclude any other time related to the subsequent charge from the time when the government must be ready to try the first charge.

charge, the defendant will still receive a prompt trial on the later charge.[3]

■ The situation is quite different when, as here, the government seeks to use the pendency of state proceedings to excuse delay in the trial of a federal case. The federal courts ordinarily can do little to ensure that pending state charges are promptly tried. Since the disposition of criminal proceedings in state court may require far more than six months, Rule 5(a) must be read narrowly when the "proceedings . . . pending" are in state court. Accordingly, except for the period when the defendant is actually on trial in a state court, I think that Rule 5(a) does not extend the time in which the government must be ready to try a federal defendant by that period of time during which state criminal proceedings are pending against that defendant, unless the government has made reasonable efforts to ensure the presence of the defendant.

■ This interpretation of the Prompt Disposition Plan is appropriate since the pendency of state criminal proceedings does not affect the federal government's ability to try different charges in federal court, except insofar as the defendant may be in state custody and therefore unavailable. To ensure the speedy trial of federal defendants, it makes sense to require that the government be ready for trial within the normal six-month period envisioned by the Plan unless it shows that it has made diligent, but unsuccessful, efforts (see Rules 5(d) and 5(f)) to obtain a defendant's presence for his federal trial.[4]

---

**3.** I do not see why the government should not be required to be ready to try a second set of charges prior to a date six months after the first trial. Such a result would be more in accord with the purposes of the Prompt Disposition Plan.

Indeed, it can be argued that Rule 5(a) only allows the time during which a defendant is actually on trial on a prior charge to be excluded from the determination of when the government should be ready to try a subsequent case. Except for the phrase "trial of other charges," the Rule seems to be directed at proceedings in the case in which the government's readiness time is being calculated. The other examples given in the Rule concern competency proceedings, pre-trial motions, and interlocutory appeals. The government obviously could not be ready to try a case if, where competency has been challenged, a defendant had not yet been found competent to stand trial, if pre-trial motions in the case had not been decided, or if an appeal was pending in the case. However, the existence of outstanding motions or appeals in one case would ordinarily have little bearing on the government's ability to be ready to try another case apart from the need to secure defendant's presence at trial, a subject covered by Rules 5(d) and (f).

Unfortunately, the drafting history of the ABA Standards, the Second Circuit Rules, the Southern District Plan and the new Speedy Trial Act of 1974, Pub.L.No.93–619 (Jan. 3, 1975) (a provision similar to Rule 5(a) is now contained in 18 U.S.C. § 3161(h)(1)) do not explain the drafters' intentions with respect to this question. However, the new Act sets a maximum of thirty days on the time excludable because "any proceeding concerning the defendant" is actually under advisement. 18 U.S.C. § 3161(h)(1)(G). This limitation suggests that Congress intended section 3161(h)(1) to be read more narrowly than other speedy-trial rules containing no such limitation. 4 U.S.Code & Ad.News, 93 Cong., 2d Sess. 1974, at pp. 7425–26 (H.R.Rep.No.93–1508).

**4.** It would be prudent for the government to keep the district court fully advised concerning its efforts to obtain a state-held defendant for his federal trial so that the court can determine whether or not the government has been sufficiently diligent so as to expand the time in which it must be ready for trial. Where the facts show that the state is not moving expeditiously toward trial or where the state charges are of a relatively minor nature, the district court may require the government to make the fullest possible effort to obtain the presence of a federal defendant for his federal trial. However, if the state charges are of a more serious nature than the federal charges and if the state is proceeding expeditiously to try those charges, the district court may conclude that the public interest is better served if the state trial goes forward first. Of course, the district court may always grant a continuance at defendant's request in a proper case in order to allow state charges to be tried first. Such a continuance would expand the time in which

FEINBERG, Circuit Judge (concurring):

I concur in the opinions of both Judge Moore and Judge Lumbard.

the government would have to be ready for trial. Prompt Disposition Rule 5(b). See also

18 U.S.C. § 3161(h)(8) (both government and defendant allowed to seek continuance).