such consideration of the trustee's other arguments as may be appropriate

AFFIRMED AND REMANDED.

UNITED STATES of America, Plaintiff-Appellee,

v.

William MONTOYA, Defendant-Appellant.

No. 86–1804.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1987.

Decided Aug. 18, 1987.

144

Ronald Bredemann, Flood Bredemann & Evans, Park Ridge, Ill., for defendant-appellant.

Michael J. Shepard, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The United States charged defendant William Montoya with conspiring with two other men, Jose Rios and Roberto Gonzalez, to possess cocaine with an intent to distribute it in violation of 21 U.S.C. § 846 (1982). The government also charged Montoya with aiding and abetting Rios's and Gonzalez's distribution of cocaine and travel in interstate commerce with the intent to carry on a narcotics transaction, in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 1952(a)(3) (1982). A jury convicted Montoya of conspiring with Rios and Gonzalez and of aiding and abetting Gonzalez, but it acquitted Montoya of aiding and abetting Rios.[1] Montoya challenges his conviction on the bases of alleged violations of the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq. (1982), and an unfair trial resulting from the admission of hearsay evidence. We affirm.

## I. FACTUAL BACKGROUND

On May 10, 1984, two Chicago police officers followed and then stopped Jose Rios at Chicago's O'Hare Airport. Rios had just come in from Miami on a non-stop flight. He was carrying a maroon-colored duffel bag. Rios allowed the officers to search his bag. Their search uncovered a box filled with plastic bags of cocaine worth $500,000. The box was taped with tan-colored tape and was coated with coffee crystals. (Coffee crystals or other strong-smelling substances often are used in drug-smuggling operations to deter police dogs from sniffing out the presence of drugs.)

Five days later, on May 15th, the same two police officers followed and then stopped Roberto Gonzalez at O'Hare Airport as he arrived on a non-stop flight from Miami. Gonzalez was carrying a red-colored duffel bag of the same size and shape as the one Rios had carried five days earlier. Gonzalez allowed the officers to search his bag. Their search uncovered a box

filled with plastic bags of cocaine worth $2 million. The box was taped with tan-colored tape and was covered with coffee crystals.

The evidence at trial showed how defendant Montoya was linked to Rios and Gonzalez. Much of this evidence came from Gonzalez's testimony. Gonzalez testified that he and Rios worked together as security guards at an apartment building in Miami Beach, Florida. They became friends and used drugs together. Rios told Gonzalez that he was going to quit working as a security guard and work for his uncle instead. Rios's uncle was Montoya, who lived in the apartment building the two men guarded. Rios told Gonzalez he was going to deliver cocaine to a Chicago contact for his uncle. Gonzalez told Rios he "wanted to be in that line of work."

Rios eventually introduced Gonzalez to his uncle Montoya. Gonzalez learned the cocaine-delivery procedures from Rios and was instructed by Montoya on other specifics. Gonzalez made his first cocaine delivery to the Chicago contact in April 1984. Gonzalez made two more trips to Chicago later that month. But on Gonzalez's fourth trip to Chicago, on May 15th, he was arrested. He did not know at the time of his arrest that Rios had been arrested five days earlier.

When Gonzalez was arrested, and was informed that Rios had been arrested, he agreed to cooperate with the police. The plastic bags of cocaine in the box in his duffel bag were replaced with plastic bags of flour. The box was resealed. The police instructed Gonzalez on the new delivery procedures. They were prepared to observe and supervise Gonzalez and record any telephone conversations he might have with Montoya in Florida. Gonzalez went to the delivery site, but found nobody there—his police questioning and other preparations had consumed five hours of time. Gonzalez made a telephone call to Montoya from a pay telephone. Gonzalez told Mon-

1. The district judge subsequently sentenced Montoya to ten years imprisonment, to be followed by five years of probation. This sentence was to be served concurrently with a seven-year sentence of imprisonment imposed on Montoya in the Western District of Texas for importing cocaine.

toya he had missed the Chicago contact because he was late. Montoya told Gonzalez to wait for further instructions. A few minutes later the Chicago contact called Gonzalez. He told Gonzalez to go to a particular Holiday Inn. Gonzalez then went with the police to set up a controlled delivery, but Gonzalez and the police went to the wrong Holiday Inn.

At the wrong Holiday Inn Gonzalez received a telephone call from his wife. She told him that Montoya was trying to find him and that he did not have enough quarters to continue searching for Gonzalez from the pay phone he was at in Florida. She told Gonzalez to stay where he was so that he could receive a phone call from Montoya. Gonzalez then received a call from Montoya, which set off a series of telephone calls between Gonzalez, Montoya, and the Chicago contact. A second delivery was attempted late that night but failed. Gonzalez had a number of additional conversations with Montoya the next morning. Montoya instructed him to attempt to meet the Chicago contact again. All of these conversations Gonzalez had with Montoya were recorded by the police. Gonzalez met with the contact, but the contact became suspicious and told Gonzalez to flee because "the Feds" had followed Gonzalez. Gonzalez ran away from the meeting and the police arrested the contact. Montoya, meanwhile, fled from Miami Beach to Colombia and became a fugitive from justice.

## II.  PROCEDURAL BACKGROUND

Over a year after Montoya fled to Colombia, he returned to the United States. On August 1, 1985, a warrant for Montoya's arrest was issued and a complaint filed in the Northern District of Illinois. Four days later, on August 5th, Montoya was arrested in the Western District of Texas. The Western District of Texas filed a complaint against Montoya on the day of his arrest and indicted him the following day. A week later, on August 13th, Montoya made his initial appearance before a United States magistrate in Texas. He received an explanation of the charges against him

originating in the Northern District of Illinois. After another week, on August 21st, a United States magistrate in Texas ordered that Montoya's removal to the Northern District of Illinois be stayed pending disposition of the charges against him in the Western District of Texas.

Later, on November 1st, Montoya was arraigned on the Texas charges. After two more weeks, on November 14th, he was indicted on the Illinois charges. A month later, on December 11th, Montoya entered into a plea agreement on the Texas charges and was sentenced. About two weeks later Montoya was transported to Chicago and arraigned on the Illinois charges on December 24th. On January 9, 1986, the district judge in Illinois set the case to go to trial on March 10th. He also set a motions schedule that required Montoya to file all pretrial motions by January 22nd. Montoya went to trial on the Illinois charges on March 10th. He was convicted by a jury of some of the counts in the Illinois indictment and subsequently sentenced on his conviction on May 15, 1986.

## III.  DISCUSSION

Montoya's main argument is that the government twice violated his right to a speedy trial under the Speedy Trial Act.

■ Our determination of whether the Speedy Trial Act was violated requires us to review the district court's interpretation of that act. Statutory interpretation is something a district court undertakes as a matter of law. *Atlantic City Municipal Utilities Authority v. Regional Administrator*, 803 F.2d 96, 105 (3d Cir.1986) ("The interpretation of statutory language is a matter of law subject to review in the courts....") (Sloviter, J., dissenting); *Lorenz v. Sauer*, 807 F.2d 1509, 1511 (9th Cir.1987) ("The district court's construction of that statute, a legal question, is reviewed *de novo*."). We review legal determinations made by a district court *de novo*. *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648, 652 (7th Cir.1987); *SEC v. Suter*, 732 F.2d 1294, 1300 (7th Cir.1984) ("An appellate court may properly conduct an independent review and resolution of questions

of law determined by a district court. Conclusions of law made by a district court do not bind a reviewing court.") (citations omitted).

The Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (1982), was a legislative response to a perceived failure in the court system to adequately ensure that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. To guarantee speedy trials, Congress requires through the Speedy Trial Act that the government bring criminal defendants to trial within 100 days of arrest. This 100 days is divided into two time periods. Congress allots thirty days to the time between arrest and indictment under section 3161(b) and seventy days to the time between indictment and trial under section 3161(c)(1). Certain periods of delay are excludable under section 3161(h) in computing the days for both periods. The sanction under section 3162 for violating either one of these time periods is that the government either drop the charges or dismiss the indictment against the defendant.[2]

Montoya was arrested in Texas on August 5, 1985. His arrest on that date started the thirty-day clock running on the period of time between arrest and indictment.[3] Counting ahead thirty days, excluding the day of arrest but including Saturdays, Sundays, holidays, and the day on which the indictment is handed down,[4] the Illinois indictment should have been returned no later than September 4th. But Montoya was not indicted on the Illinois charges until November 14th, a total of 101 days from his arrest. Montoya thus argues that section 3161(b) was violated and that the Illinois charges against him should be dropped in accordance with the sanction provided in section 3162.

The government argues, however, that almost all of the 101 days between Montoya's arrest on August 5th and his Illinois indictment on November 14th are excludable under section 3161(h)(1)(D). That section provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed ... [including] [a]ny period of delay resulting from other proceedings concerning the defendant, in-

---

**2.** Although it may seem inefficient not to allow Montoya to raise a speedy trial challenge by interlocutory appeal that could potentially result in a dismissal of the indictment and avoidance of trial, courts have unanimously held that there is no right to an interlocutory appeal of a motion to dismiss an indictment under the Speedy Trial Act. *United States v. Crawford Enterprises, Inc.,* 754 F.2d 1272, 1273 (5th Cir. 1985); *United States v. Moller-Butcher,* 723 F.2d 189, 191 (1st Cir.1983); *United States v. Mulherin,* 710 F.2d 731, 743 (11th Cir.), *cert. denied,* 464 U.S. 964, 104 S.Ct. 402, 78 L.Ed.2d 343 (1983); *United States v. Grabinski,* 674 F.2d 677, 678 (8th Cir.) (en banc), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982); *United States v. Bilsky,* 664 F.2d 613, 615–19 (6th Cir. 1981); *United States v. Mehrmanesh,* 652 F.2d 766, 769–70 (9th Cir.1980); *accord United States v. MacDonald,* 435 U.S. 850, 861–62, 98 S.Ct. 1547, 1553–54, 56 L.Ed.2d 18 (1978) (holding no interlocutory appeal of sixth amendment right to speedy trial).

**3.** Section 3161(b) commands:
Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b) (1982). *Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended* 3 (1984) ("*Committee Guidelines*") ("If the defendant is arrested or served outside the district in which charges are pending, the allowable time for the filing of an information or indictment still begins to run as a formal matter from the date of such arrest or service.").

**4.** Rule 45 states:
In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday.... When a period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.
Fed.R.Crim.P. 45(a). The *Committee Guidelines* adopt Rule 45's time computations as the appropriate measures for computing time under the Speedy Trial Act. *Committee Guidelines* at 24–25.

cluding but not limited to delay resulting from trial with respect to other charges against the defendant...." *Id.* The government argues that because Montoya was being held in Texas on other charges, the speedy trial time clock was stopped. We first address an issue under the Speedy Trial Act that could be dispositive. That issue is the meaning of the word "trial" under section 3161(h)(1)(D). The government seeks to exclude most of the 101 days between Montoya's arrest and his Illinois indictment. The government argues that the time from the Texas indictment on August 6th until the time of the Illinois indictment on November 14th, a total of 100 days, is excludable as delay resulting from a "trial." The government apparently assumes, and Montoya does not disagree, that all preparations leading up to Montoya's Texas trial are included within the word "trial."[5] But we think the parties assume far too much. It is not clear from the face of the statute what is meant by the word "trial."

Some courts have indicated in a somewhat different setting that a trial "commences" for purposes of the Speedy Trial Act only when the *voir dire* process has begun.[6] If we were to rely on those courts' definition of when a trial begins, then we would exclude none of the 101 days between Montoya's arrest and his Illinois indictment. This is so because all of the time Montoya spent in Texas prior to his Illinois indictment was spent in preparation for trial or sentencing, not in actual trial. There never was a Texas trial because Montoya entered into plea negotiations with the government and pled guilty

to one of the two counts brought against him in Texas.[7]

We do not feel bound, however, by those courts' interpretation of the word "trial." They were faced with the question of when a trial commences under section 3161(c)(1) of the Speedy Trial Act to determine whether seventy days had elapsed from the handing down of the indictment to the commencement of trial. The defendants in those cases argued that their trials did not commence until some time after the *voir dire*. Moreover, under section 3161(c)(1), those courts were deciding when a defendant's trial commenced on the applicable charges; they were not attempting to decide how much delay resulted from a "trial *with respect to other charges* against the defendant" under section 3161(h)(1)(D). Thus, those courts' conclusion under section 3161(c)(1) that a trial commences when *voir dire* begins does not control our analysis under section 3161(h)(1)(D) of what amount of delay is attributable to a separate trial in another jurisdiction on other charges *before* the defendant goes to trial on the applicable charges.

Apart from those cases deciding when a trial commences under section 3161(c)(1), it appears that federal courts take two approaches under section 3161(h)(1)(D) in deciding what amount of delay results from the "trial" of a defendant on other charges. In a concurring opinion in a case decided by the Second Circuit, for example, Judge Lumbard maintained that the delay resulting from trial on other charges under section 3161(h)(1)(D) is limited to "the period when the defendant is actually on trial." *United States v. Oliver*, 523 F.2d 253, 261 (2d Cir.1975) (Lumbard, J., concurring);

**5.** Montoya characterized this excludable period as "the pendancy [sic] of an unrelated charge in federal court in Texas." The government similarly stated that "an unrelated cocaine importation charge was pending against defendant in federal court in Texas."

**6.** *E.g., United States v. Manfredi*, 722 F.2d 519, 524 (9th Cir.1983); *United States v. Howell*, 719 F.2d 1258, 1262 (5th Cir.), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. Gonzalez*, 671 F.2d 441, 443–44 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *United States v.*

*Nance*, 666 F.2d 353, 360 n. 18 (9th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 376 (2d Cir.1979).

**7.** Montoya had been charged in Texas with importing cocaine, in violation of 21 U.S.C. §§ 952(a) & 960(a)(1) (1982), and with possessing cocaine with an intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1982). Montoya pled guilty to importing cocaine and the government dropped the possession charge presumably in return for that plea.

*United States v. Morales,* 460 F.Supp. 668, 669 (E.D.N.Y.1978) (following Judge Lumbard's concurrence in *Oliver*). Judge Lumbard holds this view because the pendency of other criminal proceedings should not "affect the federal government's ability to try different charges in federal court, except insofar as the defendant may be in state custody and therefore unavailable." *Oliver,* 523 F.2d at 261. If the defendant is unavailable, *i.e.,* "the government has made reasonable efforts to ensure the presence of the defendant," *id.,* but failed, then apparently Judge Lumbard will exclude the amount of time the defendant is held on other pending charges, but not otherwise. Montoya's situation is somewhat different from the one considered by the Second Circuit because Montoya was held on federal, not state, charges in Texas after his arrest. But while the Northern District of Illinois may not have demanded Montoya's immediate presence, a United States magistrate in Texas had ordered that Montoya's removal to Illinois be stayed until the proceedings against him in Texas were concluded. We believe that even if we were to adopt and apply Judge Lumbard's test, which we do not for present purposes, this rendered Montoya sufficiently unavailable to qualify for the exception to the general rule that a "trial" under section 3161(h)(1)(D) includes only the time actually spent in court for the trial.

The Ninth Circuit takes a broader approach to the meaning of "trial" under section 3161(h)(1)(D). In *United States v. Lopez-Espindola,* 632 F.2d 107 (9th Cir. 1980), the defendant

argue[d] that we should adopt the Lumbard concurrence as the law of this circuit and hold that *only* the period of time which appellant is actually on trial can be excluded under this subsection.

Needless to say, Judge Lumbard's observations are not binding on this court. His remarks read into the legislation language which is nowhere to be found. The particular subsection of the statute which sets forth the applicable excluda-

ble period reads: *"delay resulting from trial* with respect to other charges against the defendant." [Emphasis added.] It *does not* limit the time to only that period during which the defendant is in court for jury selection, testimony of witnesses, arguments to the jury, return of verdict, etc. Anyone familiar with trial practice is aware of the fact that "delay resulting from trial" not only involves the trial itself but also the period of time utilized in making necessary preparation for trial. We find that it is within the sound discretion of the trial court judge to determine that period of delay resulting from trial with respect to other charges....

*Id.* at 109–10 (emphases in original).

We agree with the Ninth Circuit's analysis. The delay resulting from trial with respect to other charges must necessarily encompass preparations for trial. This result does not detract from the underlying purpose of the Speedy Trial Act—to guarantee defendants a speedy trial. While Montoya was being held in Texas the Western District of Texas was required to indict Montoya within thirty days of his arrest and bring him to trial within seventy days of the indictment. Montoya's right to a speedy trial was protected. He was guaranteed that within 100 days of his arrest he would be tried. At the conclusion of his Texas trial he would then be available and ready to defend the charges against him in Illinois. Alternatively, if the Western District of Texas did not try Montoya within 100 days, Montoya would be entitled to have that indictment dismissed under section 3162 of the Speedy Trial Act. He then would be available and ready to defend himself against the Illinois charges. Under either scenario, Montoya would not be languishing in a Texas prison or otherwise awaiting trial indefinitely, but would be moving toward final resolution of the Texas charges so that he could go on in a timely fashion to defend himself against the Illinois charges.[8]

8. Our holding that the pending Texas charges against Montoya fall within the meaning of the word "trial" under section 3161(h)(1)(D) is lim-

ited to the facts of this case, *i.e.,* where a federal defendant faces other federal charges in another district and his removal to the relevant district

One final question presents itself with respect to the term "trial" under section 3161(h)(1)(D). Montoya never went to trial in Texas. He apparently negotiated a plea bargain with the Western District of Texas. We believe Montoya's plea bargaining falls within the exclusion provided under section 3161(h)(1), for several reasons. Negotiating a plea bargain reasonably falls within the meaning of "trial" under section 3161(h)(1)(D). We have decided that preparations for trial are included in the meaning of "trial." It is not a large step to conclude that negotiating a plea bargain is part of the trial process even if it succeeds in avoiding a trial. Moreover, if the plea negotiations were not concluded to the mutual satisfaction of the parties, the government still would have been required to try Montoya within seventy days of his indictment.

The plea bargaining process also can qualify as one of many "other proceedings" under the generic exclusion of section 3161(h)(1). The Speedy Trial Act lists ten specific proceedings as "other proceedings concerning the defendant" that qualify for exclusion. But those ten listed proceedings are inclusive, not exclusive. Section 3161(h)(1)(D) states at the outset that the government may exclude "[a]ny period of delay resulting from other proceedings concerning the defendant, *including but not limited to* ... delay resulting from trial with respect to other charges against the defendant...." *Id.* (emphasis added). Thus, negotiating a plea bargain could be considered a proceeding other than trial, or preparation for trial, that qualifies for the exclusion. *See United States v. Goodwin,* 612 F.2d 1103, 1105 (8th Cir.) (holding exclusion under generic "other proceedings" of section 3161(h)(1) applied where defendant was held by city police "awaiting trial with respect to armed robbery charges against him"), *cert. denied,* 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980).

Montoya raises a second issue about the language of the exclusion under section 3161(h)(1)(D). Montoya argues that the exclusion requires the government to prove a causal relationship between his trial on the Texas charges and the Northern District of Illinois's delay in indicting him. Section 3161(h)(1)(D) excludes "[a]ny period of delay *resulting from* other proceedings concerning the defendant, including but not limited to ... delay *resulting from* trial with respect to other charges against the defendant...." *Id.* (emphasis added). Because the government did not actually establish this causal relationship between its delay in indicting him and the pending Texas charges, Montoya argues, the government is not entitled to the benefit of the exclusion. Based solely on a cursory reading of the bare statutory language, we might be tempted to agree with Montoya. The government's response to Montoya is that it is assumed that the exclusion operates automatically on the showing that another trial on other charges was ongoing. Neither party has cited any authority for its interpretation of the exclusion, nor did our own research disclose any.

However, our research into the other identified proceedings excluded under section 3161(h)(1) convinces us that the government's position is correct. One of the proceedings excluded from the computation of time between arrest and indictment focuses on pretrial motions. Section 3161(h)(1)(F) provides an exclusion for "[a]ny period of delay resulting from other proceedings concerning the defendant, including ... delay resulting from any pretrial motion...." *Id.* Under this exclusion courts seem to be unanimous in agreeing that the exclusion operates automatically, without any requirement that the government establish a causal relationship between delay and actual consideration of pretrial motions.[9] Although the statutory

has been stayed pending disposition of the other charges. We do not reach the issue of pretrial delay resulting from pending state charges that could be so extreme that it threatens a defendant's sixth amendment right to a speedy trial.

*See, e.g., United States v. Oliver,* 523 F.2d 253, 261 (2d Cir.1975).

9. *United States v. Rush,* 738 F.2d 497, 502 (1st Cir.1984) ("The exclusion for pretrial motions is automatic; a showing of actual delay is not required."), *cert. denied,* 470 U.S. 1004, 105 S.Ct.

language on its face could be construed to require a causal relationship for all of the exclusions, the legislative history of the Speedy Trial Act makes it clear that Congress intended the exclusions of section 3161(h)(1) to operate automatically. After reviewing the legislative history of the Speedy Trial Act, one court explained:

> From the legislative history two things are clear. One is that Congress did intend the various classifications of excludable delay in §§ 3161(h)(1–7) to be invoked automatically upon proof that the proceedings were pending. The other is that the "delay" referred to is not of the trial itself, but instead of the final date on which the trial must commence. In other words, Congress did not seek to determine the reality of whether or not a particular proceeding interfered with the commencement of trial; it used the word "delay" to denote a period of time during which the speedy trial clock would be stopped and the expiration of the 70–day period thereby postponed. By this means, Congress sought to structure a method of calculating time which would be reasonably and practically, although not necessarily directly, related to the just needs for pretrial preparation in a particular case.

Consequently, we reject [the prisoner's] causation analysis and accept the proposition urged by the government that excludable time under §§ 3161(h)(1–7) is automatically triggered once the existence of the proceeding or condition referred to in a particular subsection is established.

1355, 84 L.Ed.2d 378 (1985); *United States v. Novak,* 715 F.2d 810, 813 (3d Cir.1983) ("Congress intended the exclusions under section 3161(h)(1)–(7) to operate without requiring a factual determination of causation."), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *United States v. Stafford,* 697 F.2d 1368, 1371 (11th Cir.1983) ("[E]ach period listed in Section 3161(h) automatically is a period of delay."); *United States v. Cobb,* 697 F.2d 38, 41–42 (2d Cir.1982); *United States v. Brim,* 630 F.2d 1307, 1312–13 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981); *accord Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 1874–76, 90 L.Ed.2d

*United States v. Cobb,* 697 F.2d 38, 42 (2d Cir.1982) (footnote omitted). Congress did not intend to saddle the government with proving a causal relationship between another proceeding and its delay in indicting or bringing a defendant to trial each time it seeks an exclusion under section 3161(h)(1). To hold otherwise would create an unnecessary burden of proof on the government. The government need only show the existence of other proceedings under section 3161(h)(1) for the exclusions automatically to become effective. Therefore, we hold that the government is not required to prove that the Illinois delay in indicting Montoya was caused by the proceedings against Montoya in Texas and not for some other reason. Rather, the government need only show, as it did here, the existence of the proceedings against Montoya in Texas, where Montoya was waiting for that purpose, to qualify for the benefit of the exclusion.

In sum, Montoya is correct in asserting that 101 days elapsed from the time of his arrest to the time he was indicted on the Illinois charges—seventy-one days over the maximum allowed under section 3161(b). But the government is also correct in claiming that 100 of those 101 days are excludable. From the day after Montoya's arrest until the time his Illinois indictment was handed down, Montoya was facing other federal charges in Texas. His preparation for trial on those Texas charges, or rather his ultimately negotiating a plea bargain in hopes of avoiding a Texas trial altogether, qualify automatically, without a proof of causation, for an exclusion under section 3161(h)(1). Thus,

299 (1986) (holding under section 3161(h)(1)(F) that there is no "reasonably necessary" exception to automatic exclusion of entire time motions are pending); *see generally* R. Misner, *Speedy Trial: Federal & State Practice* § 17–9, at 259 (1983) ("The purpose of the automatically excludable time provisions is the recognition that there are 'specific and recurring periods of time often found in criminal cases' which are necessary to fair adjudication. In other words, not all delay is detrimental to society in that society has an overriding interest in justice being done in the individual case.") (quoting S.Rep. No. 93–1021, 93d Cong., 2d Sess. 9 (1974)).

100 of the 101 days are excludable and the government did not violate section 3161(b) of the Speedy Trial Act.

Montoya argues, however, that even if the government did indict him within the appropriate time frame, it did not bring him to trial within seventy days of his indictment as required by section 3161(c)(1). Consequently, Montoya claims, the Illinois indictment against him should be dismissed pursuant to the sanctions provided in section 3162.

Montoya argues that the seventy-day clock ran from the time of his Illinois indictment on November 14, 1985, to the time his trial commenced on March 10, 1986—a total of 115 days, forty-five more than allowed under section 3161(c)(1). Montoya concedes that twenty-nine days are excludable, but that still leaves eighty-six days—sixteen more than allowed under section 3161(c)(1).

The government, on the other hand, argues that the speedy trial clock did not start on the day Montoya was indicted, November 14, 1985, but rather it started on the day Montoya was arraigned in Illinois, December 24, 1985. That would mean that seventy-six days elapsed from the time Montoya was arraigned on December 24, 1985, to the time he was brought to trial on March 10, 1986—only six more than allowed under section 3161(c)(1). The government argues that more than six days are excludable.

■ Our first concern is to decide when the speedy trial clock started for purposes of the seventy-day period between indictment and trial. Section 3161(c)(1) commands:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

*Id.* The seventy-day period thus begins on the latter of two events: (1) the indictment or (2) the defendant's appearance before a judge "of the court in which such charge is pending." *Id.* It is clear that Montoya was indicted on November 14, 1985. The question remains whether Montoya's appearance before a judge "of the court in which such charge is pending" occurred on August 13, 1985, when Montoya appeared before a federal magistrate in Texas to have the Illinois charges presented and explained to him or four months later on December 24, 1985, when Montoya was arraigned before a judge in Illinois. We believe that section 3161(c)(1)'s reference to "court" refers to the specific charging district and not to any district in the federal court system. *United States v. Atkins,* 698 F.2d 711, 714 (5th Cir.1983) ("The seventy days begins to run on . . . the date the defendant was arraigned before a judicial officer *in the district* in which the charge is pending.") (emphasis added) (footnote omitted). This is true even if the defendant has appeared before a judge in another district to have the charges explained prior to arraignment in the charging district. *United States v. Wilson,* 720 F.2d 608, 609 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). Thus, Montoya appeared before a judge of the court in which the charges were pending when he was arraigned in Illinois, December 24, 1985, and not at the time he had the charges explained to him on August 13, 1985, in Texas. *See United States v. Snyder,* 707 F.2d 139, 142 (5th Cir.1983) ("Where a defendant is arraigned after he is indicted, the statutory time period starts to run on the date of the arraignment.") (footnote omitted).

This means that seventy-six days elapsed from the time Montoya was arraigned on December 24, 1985, to the time his trial commenced on March 10, 1986. That is six more than section 3161(c)(1) allows. The government contends, however, that more than six other days are excludable.

Montoya was arraigned in Illinois on December 24, 1985. Montoya's case was set for status before the district judge. On January 9, 1986, the district judge set a

motions schedule. The schedule provided Montoya with the time between January 9th and January 22nd to file pretrial motions. The schedule also provided the government with one week following January 22nd to respond to any motions filed by Montoya. Neither side filed any motions during this time.

■ The government argues, however, that the thirteen days between January 9th and January 22nd are excludable under section 3161(h)(1) as delay resulting from time allowed for the preparation of pretrial motions.[10] Montoya argues, on the other hand, that the time allowed for the preparation of pretrial motions is not excludable if the district court *sua sponte* grants the time for preparation when the defendant has not asked for it and motions are never filed.

We have commented in three recent cases about the time spent in preparing pretrial motions under section 3161(h)(1). *United States v. Tibboel,* 753 F.2d 608, 610 (7th Cir.1985); *United States v. Latham,* 754 F.2d 747, 752 n. 4 (7th Cir.1985); *United States v. Thomas,* 788 F.2d 1250, 1256 (7th Cir.), — U.S. —, *cert. denied,* 107 S.Ct. 187, 93 L.Ed.2d 121 (1986). Contrary to Montoya's assertion, none of those three cases explicitly states that the defendant had sought time to prepare motions. *Tibboel,* 753 F.2d at 610 ("When Tibboel appeared in court on April 14 to plead not guilty, the judge gave him 10 days in which to file pretrial motions."); *Latham,* 754 F.2d at 752 n. 4 ("In this case, the district court ordered all [pretrial] motions to be filed by January 4, 1983."); *Thomas,* 788 F.2d at 1256 ("On April 9, 1984, the magistrate set a briefing schedule for the filing of pretrial motions."). Rather, for all that appears in those cases, the district courts may have set motions schedules *sua sponte* without request of the defendants. Thus, the fact that the district judge here

routinely set a motions schedule without Montoya's specific request is irrelevant. The issue is whether the time granted by the district judge for preparation of pretrial motions is excludable, not on whose initiative the district judge set the pretrial motions schedule.

It is clear from the cases "that time consumed in the preparation of a pretrial motion must be excluded—provided that the judge has expressly granted a party time for that purpose." *Tibboel,* 753 F.2d at 610; *Thomas,* 788 F.2d at 1256. Even when motions are not actually filed in the allotted time, the amount of time *granted* by the district judge for their preparation and submission is excludable. *See Latham,* 754 F.2d at 752 n. 4 (although motions ultimately were filed in the case, the court noted that "the time *allowed* by the district court for preparation of motions and briefs is excludable under the [Speedy Trial] Act when the district court judge has set a specific date for the preparation and submission of pretrial motions") (emphasis added). The allowance of a reasonable time for the consideration, possible preparation, and filing of pretrial motions is routinely and necessarily allowed without a specific request. Whether a defendant actually files a motion or not is immaterial as the time served the purpose of allowing the defendant to consider what was in his best interests. If the defendant believes no time or less time is needed he can so advise the court and the case may proceed without regard to possible pretrial motions. In this case there was no objection to the time allowed, and the time allowed was reasonable and minimal.

■ Therefore, the thirteen days between January 9th and January 22nd are excludable as delay resulting from other proceedings under section 3161(h)(1). Subtracting those thirteen days from the seventy-six that elapsed from Montoya's ar-

---

10. This delay results "from other proceedings concerning the defendant," but it is not the type of delay described in section 3161(h)(1)(F). That exclusion is limited to

    delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion....

18 U.S.C. § 3161(h)(1)(F) (1982). Our concern here is with the time allowed for preparation of the motion, which occurs before "the filing of the motion." *Id.*

raignment to the commencement of his trial, a total of sixty-three days qualify. A sixty-three day interval between arraignment and trial is sufficient under section 3161(c)(1)'s seventy-day maximum. Therefore, the government did not violate section 3161(c)(1) and Montoya is not entitled to have his indictment dismissed under section 3162.

Besides complaining that the government violated the Speedy Trial Act, Montoya also argues that he was subjected to an unfair trial because the district judge improperly admitted hearsay evidence.

■ We will not necessarily reverse a district judge solely because he admits hearsay evidence not subject to any of the hearsay exclusions or exceptions. In the context of an evidentiary review, we must decide whether the district judge's error was substantial or merely harmless. If the error is insubstantial, then the harmless error rule says that we must leave untouched the district court's decision, even though it was incorrect. 28 U.S.C. § 2111 (1982); Fed.R.Crim.P. 52(a); Fed.R.Evid. 103(a); *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984); *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967). And finally, we note that the party challenging the error has the burden of proving that the error was substantial, not merely harmless. *E.g., Ellis v. Chicago,* 667 F.2d 606, 611 (7th Cir.1981).

■ Montoya contends: "The Government centered its entire case against Montoya around hearsay statements testified to by a DEA Agent, Dale Anderson, along with the testimony of an admitted drug courier Roberto Gonzalez."

Agent Anderson interviewed defendant Rios several months after Rios had been caught at the airport with cocaine. Agent Anderson testified at trial, over Montoya's objection, that Rios told him Montoya was a participant in the cocaine smuggling operation along with Gonzalez.

There seems to be no question that Agent Anderson's testimony about what Rios said to him was hearsay. The government did not argue for, nor did the district judge identify, any exception to the hearsay rule under which Agent Anderson's testimony might qualify. Thus, as a matter of law, the district judge erred in admitting that evidence. Fed.R.Evid. 802 ("Hearsay is not admissible...."). But because we have concluded the district judge erred does not mean that Montoya's conviction must be reversed. We must consider what harm was done in deciding whether the admission of Agent Anderson's testimony affected Montoya's substantial right to a fair trial.

■ Immediately after Agent Anderson testified that Rios told him Montoya was part of the cocaine smuggling operation, Montoya objected. The district judge cautioned the jury at that time about its use of Agent Anderson's testimony that Rios said Montoya was involved in the drug smuggling operation. At the close of the government's case the district judge elaborated on his previous comment to the jury:

One more thing. You will recall on Friday Mr. Anderson testified about a conversation that he had with Mr. Rios, and objection was made after he answered one or two questions about it. I sustained the objection with respect to any further questions because this was like Rios saying something about somebody else telling Mr. Anderson, which is like a double-hearsay, and there is no way the defense could test that because they didn't have the other two people available to ask them whether or not they told Mr. Anderson that, or whether they told Mr. Rios that.

So you are to ignore any of that testimony you heard prior to the time I sustained the objection.

We have previously held that "[p]roper instructions will usually suffice to correct damage from any erroneously admitted evidence or evidence admissible only for a limited purpose." *Cramer v. Fahner,* 683 F.2d 1376, 1384 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982); *see United States v. Behrens,* 689 F.2d 154, 162 (10th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 734

(1982). In this instance particularly it seems clear that the jury was able to understand and follow the district judge's cautionary remarks—the jury acquitted Montoya of aiding and abetting Rios's distribution of cocaine and travel in interstate commerce, while it convicted Montoya of aiding and abetting Gonzalez's commission of the same crimes.

Moreover, the government presented substantial other evidence, particularly Gonzalez's testimony, of Montoya's participation in the drug smuggling operation. Montoya argues, however, that "Gonzalez's testimony, by itself, was so lacking in creditability [sic] it cannot be considered independent and overwhelming evidence of guilt." Montoya devoted a large part of his brief to attacking Gonzalez's credibility and character, in an apparent attempt to show the weakness of Gonzalez's testimony and the magnitude of the district judge's error in admitting Agent Anderson's hearsay testimony.

But "it is the jury's special province to weigh conflicting testimony, determine credibility and draw factual inferences." *United States v. Beck*, 615 F.2d 441, 448 (7th Cir.1980); *United States v. Blasco*, 581 F.2d 681, 684–85 (7th Cir.), *cert. denied*, 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978). Moreover, it is well settled that "even the *uncorroborated* testimony of a single accomplice is sufficient by itself to sustain a conviction, if the testimony is not 'incredible or unsubstantial on its face.'" *United States v. Escalante*, 637 F.2d 1197, 1198 (9th Cir.) (emphasis added) (quoting *Haakinson v. United States*, 238 F.2d 775, 779 (8th Cir.1956)), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980).

We hold that the admission of the hearsay evidence was harmless error because of the district judge's cautionary remarks to the jury and because of the other overwhelming evidence, elicited through the testimony of Gonzalez and others, of Montoya's participation in the cocaine smuggling operation.

AFFIRMED.