12 F.3d 1101
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnathan GAYDEN, Defendant-Appellant.
 No. 93-1054.
 United States Court of Appeals, Seventh Circuit.
 Nov. 18, 1993.
 
 Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Defendant Johnathan Gayden was convicted by a jury on June 18, 1992 of violating 18 U.S.C. Sec. 922(g)(1), which prohibits the possession of firearms by convicted felons. Following the denial of various post-trial motions, the district court sentenced Gayden to 188 months in prison to be followed by four years of supervised release. Gayden raises several challenges to his conviction and sentence. We affirm.
 
 I. FACTS
 
 2
 On August 18, 1991, two Chicago police officers were patrolling a Chicago Housing Authority ("CTA") high-rise in an unmarked police car to investigate an incident that had occurred there. The area was known as one where drugs, and particularly PCP-soaked cigarettes, were commonly sold. The officers had made numerous arrests at this location in the past. The officers observed three men talking in the street near a car that was parked a short distance from the entrance to the high-rise. As the officers drove slowly toward the gathering, they observed that one of the men, later identified as Gayden, was holding a blue towel. As they pulled their car alongside the parked car, one of the officers observed a bulge in Gayden's waistband beneath his shirt. The officers stopped a few feet away and left their vehicle. Gayden dropped the blue towel and three hand-rolled cigarettes to the ground. The officers recognized the cigarettes to be laced with PCP. Gayden then looked toward the officers, grabbed the area near his waistband, and made a turning motion. One of the officers reached for Gayden and grabbed him from the back around the waist. In doing so, he felt a hard object in the front of Gayden's waistband. The officer removed the object, revealing a loaded, semiautomatic .22 caliber pistol. The officers arrested Gayden and confiscated his gun and the three cigarettes, which were later analyzed and determined to contain PCP.
 
 II. DISCUSSION
 A. Waiver
 
 3
 On appeal, Gayden raises no less than twelve challenges to his conviction and sentence. Seven of these arguments are presented only in a cursory fashion without appropriate citations to authority. They include the following: that the district court erred when it allowed the government to introduce evidence that Gayden possessed narcotics and that this was his motive for possessing a gun; that the district court erred when it allowed the government to elicit from the police officers the fact that they were in the area investigating an "incident"; that prejudicial error occurred when the government was allowed to question a defense witness about his interview with defense counsel; that prejudicial error occurred from allegedly improper comments by the government during closing argument; that the district court erred when it responded to a question from the jury that requested a definition of reasonable doubt; and that the court erred at sentencing when it concluded that the defendant was eligible for sentencing as an armed career criminal. Because Gayden provided no authority to support these arguments, they are waived, and we do not address them here. United States v. Papia, 910 F.2d 1357, 1363 (7th Cir.1990) (appellant must present an argument accompanied by relevant authority in order to preserve the issue for appeal); see also United States v. Nururdin, No. 92-2756, slip op. at 6 (7th Cir. Nov. 3, 1993) ("We have previously held that to preserve his claim, an appellant must provide this court with more than a one-page assertion unsupported by any authority."). An appellant cannot take the scatter-shot approach of raising innumerable issues on appeal without citation to appropriate authority in the hopes that the court's own research will reveal a potential winner. That is the approach that Gayden has taken here. Despite the waiver problem, however, we have reviewed the above arguments and find them all without merit. In the pages that follow, we address more fully the remaining five contentions that were supported by appropriate authority and that were therefore preserved for our review.
 
 B. Speedy Trial Claim
 
 4
 Gayden's first contention is that his rights under the Speedy Trial Act were violated. In analyzing this claim, we must consider the course of proceedings below. Gayden was arraigned on December 31, 1991, and at his arraignment, the Magistrate Judge required defense counsel and the government to confer about discovery matters on or before January 10, 1992. The Magistrate Judge also required Gayden to submit any pretrial motions by January 31, 1992, with the government to respond by February 14, 1992. Gayden did not file any pretrial motions. Yet on March 1, 1992, the government for the first time produced the gun that Gayden allegedly had possessed at the time of his arrest as well as other physical evidence. At a March 10, 1992 hearing, Gayden's counsel accused the government of improper conduct in delaying his inspection of the handgun, the key piece of physical evidence in the case. The government blamed the delay on the fact that the gun had been in the possession of the Chicago Police Department, and it argued that it had made the gun available to defense counsel as soon as it was transferred to federal custody.
 
 
 5
 When the district court found no government misconduct in the delayed production of the firearm, Gayden then objected to the exclusion of the time period from December 31, 1991 to February 14, 1992 from the Speedy Trial clock, contending that the government had not complied with its discovery obligations, making it impossible for counsel to prepare pretrial motions in accordance with the Magistrate Judge's schedule. The district court responded to this objection by offering to try the case within two weeks. Gayden's counsel declined the offer, however, explaining that he was not yet ready for trial, that he needed more time to prepare, and that he might file a motion to suppress. The district court thus gave Gayden until March 27 to file any pretrial motions and ordered the government to respond by April 17. The court also undertook to decide the motions by May 8.
 
 
 6
 The government then moved to exclude this additional motions schedule from the Speedy Trial Act requirements. After the parties had briefed the issue, the district court granted the government's motion and excluded between March 10 and May 8, 1992 from the running of the Speedy Trial clock pursuant to 18 U.S.C. Sec. 3161(h)(1)(F). The court also reaffirmed its earlier finding that there had been no government misconduct or violation of the rules of discovery.
 
 
 7
 On appeal, defendant renews his challenge to the exclusion of the December 31, 1991 to February 14, 1992 time period from the Speedy Trial Act. "Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." United States v. Scott, 784 F.2d 787, 789 (7th Cir.), cert. denied, 476 U.S. 1145 (1986). Under the Speedy Trial Act, time may be excluded for any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. Sec. 3161(h)(1)(F). This provision automatically applies whenever a court sets a period of time for the filing of motions. Henderson v. United States, 476 U.S. 321, 327 (1986); United States v. Montoya, 827 F.2d 143, 153 (7th Cir.1987). Unless the defendant indicates that he does not want to file pretrial motions, a motions schedule set by a court automatically constitutes time that is excluded under the Speedy Trial Act even if no motions are actually filed. Montoya, 827 F.2d at 153.
 
 
 8
 We find no legal error and no abuse of the district court's discretion in excluding the time period between December 31, 1991 and February 14, 1992. First, as the district court properly found, the government did not violate Fed.R.Crim.P. 16 by not producing the handgun prior to March 1, 1992, as the government is only required to produce items that are in its "possession, custody, or control." Gayden has not disputed the government's explanation for its inability to produce the handgun earlier, and the district court properly determined that no evidence of government misconduct existed with respect to the delay. Further, we agree with the government that Gayden's motion to suppress evidence did not hinge on his ability to inspect the gun, as the basis for the suppression motion was that Gayden had been searched and arrested without probable cause. Finally, for the same reason, we do not understand how Gayden was prejudiced by the government's delay in producing the handgun where he was afforded additional time to submit pretrial motions and the district court offered to try the case on March 23, 1992. The district court properly excluded the contested time period from the Speedy Trial Act pursuant to 18 U.S.C. Sec. 3161(h)(1)(F).
 
 B. Batson Challenge
 
 9
 Gayden next raises a challenge under Batson v. Kentucky, 476 U.S. 79 (1986), to the district court's exclusion of a prospective juror for cause based on her sexual orientation, claiming that the district court's action violated his right to a fair trial. During voir dire, prospective jurors were asked about their personal connections to any law enforcement officers. A woman in the venire volunteered that she came from a family of police officers and that she also had been a former police cadet. The same woman later volunteered that she was a lesbian who was active in the gay community and that she had read a number of books on feminist theory. When asked by the court if she believed that she could render a fair and impartial verdict, the woman responded: "To a degree. I tend to hold a bias somewhat because I don't believe that anyone's--." She did not complete her thought, however, and when the district court repeated its question, the woman then stated that she would not have a problem rendering a fair verdict. The district court subsequently granted the government's motion to excuse this prospective juror for cause, indicating that he had severe doubts as to whether she was biased:
 
 
 10
 Her visible actions and expressions on her face at the time that she struggled at the time to say almost reluctantly that she would be able to be fair and impartial indicated to me that in real truth her feelings are so strong about various things that she is not going to be able to be fair and impartial in this case.
 
 
 11
 (June 15, 1992 Tr. at 123.)
 
 
 12
 Gayden attempts to argue that this juror was excluded based on her sexual orientation and then attempts to elevate this challenge to the level of a constitutional error under the Batson line of cases. We need not consider the potential Batson issue, however, because we think the record is clear that the district court struck this juror for cause because she clearly hesitated when indicating whether her personal views and her personal experiences with police officers would prevent her from being a fair and impartial juror. The cold record supports the district court's decision, but we also are mindful that it was the district court, and not we, who viewed this prospective juror and heard her responses. The district court's decision in this regard is thus entitled to substantial deference. Wainwright v. Witt, 469 U.S. 412, 429-30 (1985) (trial court possesses broad discretion in its rulings on prospective juror bias). Gayden's right to be tried by a fair and impartial jury was not affected by the district court's decision to grant the government's motion to strike this prospective juror for cause.
 
 
 13
 C. Motion to Dismiss Indictment for Official Misconduct
 
 
 14
 Gayden next challenges the district court's denial of his motion to dismiss the indictment for official misconduct. The circumstances surrounding the alleged misconduct involve the preparation of a report by Nicole Dildy, an agent of the Bureau of Alcohol, Tobacco, and Firearms. According to the report, Dildy interviewed City of Chicago Police Officer Hartmann on September 12, 1991 at 2650 California Street in Chicago. Under cross-examination, however, Officer Hartmann denied being interviewed at that time and place, although he stated that he had been interviewed by Dildy elsewhere. He also denied having told Dildy that he saw Gayden get out of a car on the day of his arrest, although Dildy's report indicated that Hartmann had made such a statement. The day after Hartmann's cross-examination, the government indicated to defense counsel and the court that it had discussed the matter with Dildy and that Dildy had conceded there was an error in her report. Dildy indicated that the substance of her report was accurate, but that the date and location of the interview recited in the report were not. Dildy stated that she had interviewed City of Chicago Police Officer Gavin on September 12, 1991 at 2650 California Street, but that she had interviewed Hartmann at a different location.
 
 
 15
 Gayden then moved to dismiss the indictment on the basis of official misconduct. After hearing Dildy's own testimony outside the presence of the jury and entertaining argument from the parties, the court denied the motion without prejudice to its subsequent renewal. The court ruled that Dildy's error did not constitute intentional misconduct, but that it was a mistake resulting from the agent's inexperience and her own negligence. The court nonetheless decided that defense counsel could make the jury aware of Dildy's error.
 
 
 16
 The government then decided to call Dildy to testify before the jury about the error in her report. She explained to the jury that she had interviewed both Officers Gavin and Hartmann at different times but that their statements had been substantially the same. She initially prepared a report only of the Gavin interview, but her supervisor subsequently indicated that it would be necessary to prepare a report of both interviews for her case report, which was the first case report she had ever prepared. Her supervisor told Dildy that because the officers' statements were substantially the same, she merely had to change the name on the Gavin report in order to prepare the Hartmann report. Dildy apparently took this advice too literally so that her Hartmann report did not reflect the proper time or place of the Hartmann interview. After hearing Dildy's testimony, the district court reaffirmed its preliminary determination that Dildy had not engaged in intentional misconduct and that Gayden was not prejudiced by the error, as it did not impair his ability to cross-examine Hartmann.
 
 
 17
 In arguing that the district court erred in failing to dismiss the indictment, Gayden relies on United States v. Cortina, 630 F.2d 1207 (7th Cir.1980). There, we upheld the district court's grant of a motion to suppress evidence seized pursuant to a search warrant that had been obtained pursuant to an FBI agent's affidavit that contained intentional misrepresentations. Id. at 1213. We indicated that the search warrant had been issued only because the FBI agent had lied in his affidavit and that without the false assertions, there was no probable cause for the search. Id. The misconduct in Cortina is a far cry from Dildy's error here. We agree with the district court that Dildy's error was merely negligent and that it would not serve as a basis for dismissal of the indictment for official misconduct.
 
 D. Evidentiary Issues
 
 18
 Gayden finally challenges two evidentiary rulings. We will reverse a district court's decision to admit evidence only where there has been an abuse of discretion. United States v. Sullivan, 911 F.2d 2, 6 (7th Cir.1990). We address each of Gayden's evidentiary objections in turn.
 
 
 19
 Gayden first challenges the district court's decision to allow the government to introduce testimony that Gayden was arrested in an area where illegal drugs were commonly sold. According to Gayden, this evidence was irrelevant, and it was not admissible "other crimes" evidence under Fed.R.Crim.P. 404(b). The testimony in dispute was that of Officers Hartmann and Gavin that Gayden's arrest occurred in an area near a CHA high-rise known by them to be an area where drugs, particularly PCP-based cigarettes, were commonly sold. The district court admitted this testimony to allow the government to put into context the officers' actions when they observed Gayden and subsequently arrested him.
 
 
 20
 We cannot agree with Gayden that the evidence was admitted as character evidence within the meaning of Fed.R.Crim.P. 404(b). Indeed, it was not the government's purpose to suggest, as defendant contends, that Gayden was a drug dealer simply because he was in a high crime area. Rather, the evidence was admitted to help the jury understand the officers' prompt response when they observed a bulge near Gayden's waistband, saw him toss a blue towel to the ground, and saw him quickly spin after reaching toward his belt. For example, Officer Gavin testified that he reacted both swiftly and severely to Gayden's actions because they indicated involvement with drug dealing. As the government suggests, the officers' version of events may have been less believable to the jury if not placed in context with the information that the officers believed they were in an area known for drug-dealing. We find no abuse of discretion in the admission of this testimony.
 
 
 21
 Gayden next maintains that the district court erred when it allowed Hartmann to read to the jury the information written on the Chicago Police Department evidence bag containing the narcotics seized from Gayden--that is, "Three hand rolled cigarettes, individually wrapped in cellophane, and emitting a strong chemical odor, suspect PCP." (Tr. at 256.) Gayden contends that this information should have been excluded as hearsay, but we do not agree. The words written on the evidence bag were not admitted for the truth of the matter asserted but to explain how the officer was able to identify the bag as the one he used to inventory the cigarettes. As such, it was not hearsay within the meaning of Fed.R.Evid. 801(c). We also agree with the government that this testimony was relevant in that it was necessary to prove the chain of custody of the cigarettes seized from Gayden. Accordingly, we find no abuse of the trial court's discretion in admitting the evidence.
 
 
 22
 AFFIRMED.